**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **HASHEAM MACK-TANSMORE**, | |
| *Plaintiff,* | **Case No.  2:20-cv-0689-JDW** |
| v. | |
| **MR. JONES,** *et al.*, | |
| *Defendants.* | |

### <u>MEMORANDUM</u>

Plaintiff Hasheam Mack-Tansmore alleges that Correctional Officer Green, Correctional Officer Lee, Correctional Officer Henderson, and maintenance worker Mr. Jones violated his Eighth and Fourteenth Amendment rights. The evidence in this case does not support his argument. Therefore, the Court grants Defendants' motion for summary judgment and enters judgment against Mr. Mack-Tansmore.

## I.    BACKGROUND

### A.    Facts

#### 1.    Bunk assignment

During the relevant time, Mr. Mack-Tansmore was an inmate at State Correctional Institute-Chester. He was assigned to an upper bunk. On October 20, 2018, Mr. Mack-Tansmore sprained his ankle playing basketball. Physician Assistant Nicholson treated him with a bandage, ibuprofen, and crutches. PA Nicholson also told Mr. Mack-Tansmore he

would enter a medical order for a bottom bunk, but the prison has no record of such an order.

After returning to his bunk, Mr. Mack-Tansmore told Officer Green about his injury and the order for a bottom bunk. Officer Green told Mr. Mack-Tansmore she would "look into it." (ECF No. 73-1 at 11.) Later that evening, Mr. Mack-Tansmore asked her again about his bunk status, but Officer Green said she had not gotten a chance to look into it.

The next day, Mr. Mack-Tansmore spoke with Officer Lee to check on the status of the bottom bunk order. Officer Lee said he would "look into it when he got a chance." (*Id.* at 26–27.) It is unclear if he did. Mr. Mack-Tansmore followed up with Officer Lee again, and Officer Lee said, "he couldn't move [Mr. Mack-Tansmore]" but he "was going to follow-up and see what was going on." (*Id.* at 33.) That afternoon, Mr. Mack-Tansmore asked Officer Henderson about the order, and Officer Henderson said that he did not know anything about an order and could not change Mr. Mack-Tansmore's bunk assignment. Mr. Mack-Tansmore alleges that he slept on the floor at some point because he could not climb to the top bunk.

The evening of October 21, Mr. Mack-Tansmore fell leaving his cell "on the second part of the stairs, after the landing." (*Id.* at 44–45.) Several officers, including Officer Henderson, placed Mr. Mack-Tansmore in a chair and called medical. He was ultimately transported to a hospital. He received X-rays of his back and shoulder, which were negative for fractures. Upon returning to prison the following day, Mr. Mack-Tansmore

stayed in the infirmary for two-and-a-half days and then went to a bottom tier, bottom bunk cell.

### 2.    Stairs incident

By January 2019, Mr. Mack-Tansmore used a walker, rather than crutches. On January 23, 2019, he was in "B-Tower" and tried to take the elevator to get to dinner. But the elevator stopped working at the Mezzanine level. Mr. Jones, a maintenance worker, tried to fix the elevator but was unsuccessful. Mr. Jones then told the elevator occupants, including Mr. Mack-Tansmore, that he could not fix the elevator and they should take the stairs. The occupants exited the elevator into a boiler room and crossed the room. At one point, Mr. Mack-Tansmore let go of his walker to step over a knee-high pipe and to bend beneath a low pipe.

When Mr. Mack-Tansmore reached the stairs, he complained it would be "nearly impossible" for him to walk down. Mr. Jones said he was not going to carry Mr. Mack-Tansmore down and to "get down to the best of [Mr. Mack-Tansmore's] abilities." (*Id.* at 80.) The stairs had a handrail and Mr. Jones positioned one of the other inmates in front of Mr. Mack-Tansmore so that Mr. Mack-Tansmore could hold onto the inmate for support. Mr. Jones held the walker. Mr. Mack-Tansmore fell going down the stairs. (*Id.* at 49:14-24; ECF No. 72 ¶¶ 51–52.)

Mr. Jones called medical and medical officials took Mr. Mack-Tansmore to the medical department. The medical department observed Mr. Mack-Tansmore for twenty-

four hours, provided pain medication, and took an X-ray of his back, which was negative for fractures.

### B. Procedural History

Mr. Mack-Tansmore filed suit on February 5, 2020. On May 19, 2020, Mr. Mack-Tansmore filed an Amended Complaint. In it, he asserts claims under 42 U.S.C. § 1983 for violations of his constitutional rights under the Eighth and Fourteenth Amendments. It is not clear whether he invokes the Fourteenth Amendment as an independent cause of action or as the basis to apply the Eighth Amendment to state officials. Although he does not assert a negligence claim in his Amended Complaint, his summary judgment briefs suggest that he intended (or at least now intends) to assert one.

Mr. Mack-Tansmore named Mr. Jones, Officer Green, Officer Lee, Officer Henderson, and Mr. Nicholson in their individual capacities. On February 16, 2021, the Court dismissed all claims against Mr. Nicholson because Mr. Mack-Tansmore failed to oppose the motion and did not exhaust his administrative remedies. Both Mr. Mack-Tansmore and the remaining Defendants have moved for summary judgment. The Motions are now ripe.

## II. LEGAL STANDARDS

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

**B.    Eighth Amendment**

Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (cleaned up). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* A

defendant is deliberately indifferent when he "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "[T]he official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (quotation omitted).

"Courts have found that it can be an Eighth Amendment violation where an inmate has a serious medical need requiring him to use the bottom bunk, but prison officials are deliberately indifferent to that need." *Saunders v. GEO Grp., Inc.*, Civ. A. No. 19-2322, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019) (quoting *Whitehead v. Wetzel*, Civ. A. No. 14-51, 2016 WL 356809, at *7 (W.D. Pa. June 2, 2016)). However, non-medical personnel will not "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Prison officials are generally justified in relying on the expertise and care of prison medical providers. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-

medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

### C.      Qualified Immunity

Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 308 (2015)). The official seeking qualified immunity has the burden of establishing their entitlement to the affirmative defense. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014) (citing *Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010)). To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1) whether the official violated a constitutional right and, if so, (2) whether the right was clearly established.

### III.     DISCUSSION

### A.      Eighth Amendment[1]

#### 1.      Bunk assignment

There is no evidence that Mr. Nicholson (or anyone else) entered an order requiring Mr. Mack-Tansmore move to a bottom bunk. So, while Mr. Mack-Tansmore complained

---

[1] Defendants argue that Mr. Mack-Tansmore did not exhaust his administrative remedies. Because the Court concludes in any event that the claims cannot proceed, it

to the Officers about his difficulty climbing stairs and reaching his top bunk, these non-medical personnel were justified in trusting that medical professionals at the prison—who Mr. Mack-Tansmore just met with—would recommend a bunk or cell reassignment if he needed one. *See Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170–71 (3d Cir. 2015). Without such an order they were justified in not immediately moving him.

There is also no evidence that the Officers disregarded a substantial risk to Mr. Mack-Tansmore by keeping him in his assigned bunk. He complained that he had a sprained ankle, and he complained for less than two full days. These facts stand in stark contrast to cases where inmates complained for months of long-term health needs and officers ignored them. *See, e.g., Muhammad v. Dep't of Corr.*, 645 F. Supp. 2d 299, 305–06, 314–18 (D.N.J. 2008); *Guilfoil v. Pierce*, No. CIV.A. 06-493-GMS, 2009 WL 688957, at *5–8 (D. Del. Mar. 16, 2009).

Mr. Mack-Tansmore argues a factual dispute exists about whether Mr. Nicholson entered a bottom bunk order. But he does not have any evidence that Mr. Nicholson did so. He points to Mr. Nicholson's promise to enter such an order. Making a promise and acting on it are not the same thing, though. Evidence about the promise does not amount to evidence that the order existed. Mr. Mack-Tansmore also points to a statement in Mr. Nicholson's motion to dismiss: "[b]y all accounts, [I] entered an appropriate order for

---

need not resolve the exhaustion issue. Instead, it will assume that disputed issues of fact exist on that issue.

Plaintiff to be housed in a bottom tier cell" in his Motion To Dismiss. (*See* ECF No. 79 at 1–2.; ECF No. 25-2 at 10.) Mr. Mack-Tansmore takes that as an admission. But that statement in a brief to the Court only reflects what Mr. Mack-Tansmore alleged in his Amended Complaint, not what the evidence shows. Mr. Mack-Tansmore needs evidence to establish the existence of an order, and he has none.

Even if Mr. Nicholson entered the order, there is no evidence that any of the Officers knew about it. Nor is there evidence that Mr. Mack-Tansmore's sprained ankle was such a serious condition that the Officers needed to act in the absence of a medical order. Maybe the Officers could have done more, either to follow up on the need for a bottom bunk order or to follow up on Mr. Mack-Tansmore's concerns about his sprained ankle, but that alone is insufficient to establish an Eighth Amendment violation. *See Bowman v. Mazur*, 435 F. App'x 82, 84–85 (3d Cir. 2011) (officers were not deliberately indifferent to medical needs where they missed a bottom bunk order and kept a diabetic inmate in a top bunk). Without evidence that the officers knew of a substantial risk of serious harm and ignored it they have not violated the Eighth Amendment.

Because Mr. Mack-Tansmore has no evidence that the Officers violated his constitutional rights, they are entitled to qualified immunity. Even if the Officers could have violated Mr. Mack-Tansmore's rights in the absence of a bottom bunk order, they would be entitled to qualified immunity because it was not clearly established at the time that officers had an obligation to provide treatment and care to prisoners' relatively minor,

non-emergent injuries like Mr. Mack-Tansmore's sprained ankle. The Court will therefore grant summary judgment on Mr. Mack-Tansmore's Eighth Amendment claims against the Officers.

### 2.    Stairs

Mr. Jones was not deliberately indifferent to Mr. Mack-Tansmore's medical needs when he required Mr. Mack-Tansmore to take the stairs after the elevator broke. Mr. Jones's actions demonstrate care, not deliberate indifference. He tried to fix the elevator. Then, he directed Mr. Mack-Tansmore to take the stairs after watching Mr. Mack-Tansmore walk through the boiler room, demonstrating his ability to move short distances without a walker. Mr. Jones carried the walker down the stairs for Mr. Mack-Tansmore, he knew that the stairs had a handrail, and he tasked another inmate to stand below Mr. Mack-Tansmore and provide Mr. Mack-Tansmore with support. Then, when Mr. Mack-Tansmore fell, Mr. Jones called for medical assistance.

Mr. Mack-Tansmore disputes these factual assertions and claims that Mr. Jones (1) did not station an inmate in front of him on the stairs and (2) never saw him navigate any part of the boiler room without a walker. But he points to no admissible evidence to support these assertions. Even if he provided a sworn affidavit, it would conflict with his

deposition testimony, so the Court would disregard it under the sham affidavit doctrine. *See Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).

Mr. Mack-Tansmore also complains that Mr. Jones should not have made him take the stairs in any event. Maybe one could argue Mr. Jones was negligent (though given the circumstances, the Court doubts that he was). But negligence "without a more culpable state of mind, do[es] not constitute 'deliberate indifference.'" *Caldwell v. Beard*, 324 F. App'x. 186, 188 (3d Cir. 2009) (citing *Singletary v. Pa. Dept. Of Corr.*, 266 F.3d 186, 193 n.2 (3d Cir. 2001)).

Because Mr. Jones did not violate Mr. Mack-Tansmore's Eighth Amendment rights, qualified immunity applies. Even if Mr. Jones had violated a constitutional right, qualified immunity would apply because it was not clearly established that requiring an inmate— who can walk with some assistance—to take the stairs with assistance from another inmate violates the Eighth Amendment. The Court will therefore grant summary judgment on Mr. Mack-Tansmore's Eighth Amendment claim against Mr. Jones.

## B. Other Claims

None of the other claims that Mr. Mack-Tansmore asserts, might be asserting, or intends to assert can survive summary judgment. *First*, he cannot assert a stand-alone claim under the Fourteenth Amendment because if a "constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under

the rubric of substantive due process." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010). The Eighth Amendment covers both of Mr. Mack-Tansmore's claims, so he cannot pursue claims under the Fourteenth Amendment.

*Second*, Mr. Mack-Tansmore cannot pursue a negligence claim. He did not assert it in his Amended Complaint, and he has not moved to amend his complaint. Even if he did move to amend, the Court would deny it. There is no reason that Mr. Mack-Tansmore should have waited this long to assert the claim. In addition, any negligence claim would be futile because each defendant would be immune from liability under Pennsylvania's Political Subdivision Tort Claims Act because (a) each defendant was an employee of a Commonwealth agency acting within the scope of his employment and (b) Mr. Mack-Tansmore's negligence claim would not fall within any of the statute's specific waivers of sovereign immunity. *See* 85 Pa.C.S.A. §§ 8501 (definition of "Commonwealth Party" and "Employee"), 8521-22 (defining scope of and exceptions to sovereign immunity).

## IV.   CONCLUSION

Mr. Mack-Tansmore may be angry at prison officials, and rightfully so, for asking him to take stairs to get to a bunk and dinner while he used crutches and a walker. But he has not shown a basis to hold officials liable for their conduct. For that reason, the Court

will grant Defendants' summary judgment motion and deny Mr. Mack-Tansmore's motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

January 26, 2022